Sutliff, J.
The question presented is, whether five years intervened between the 28th day of October, 1846, the date of the writ which was levied on Kelley’s lands, “ and the time of suing out another writ of execution” on said judgment, within the meaning of the following section of the statute then in force. (Swan’s Stat. 1841, sec. 101, p. 671):
“ That if execution shall not be sued out within five years from the date of any judgment that now is, or that may hereafter be rendered in any court within this state, or if five years shall have intervened between the date of the last execution issued on any such judgment obtained as aforesaid and the time of suing out another writ of execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor.”
It is provided by section 2 of the “ act further defining *418 the duties o.f sheriffs and coroners,” passed March 1,1838, (Swan’s Stat. 1841, p. 862) as follows:
“ That there shall be kept in the sheriff’s office, in the several counties of this state, a book which shall be furnished at the cost of the proper county in which the sheriff or coroner shall forthwith, upon the receipt of the same, make an entry of every execution, order, decree, or other process issuing from any court of any county in this state, other than that in which such sheriff or coroner may reside, and to him directed, commanding and requiring a sale to bo made of property in his county ; which entry shall be made in double form, giving the name of the plaintiff or plaintiffs, the date of such execution, order, decree or other process, when received by him, whether sheriff or coroner, from what court or county issued, ihe date and amount of the judgment, order or decree, and, in case of a levy on real estate, the date of the levy, with a pertinent description of the premises upon which levied; and such entry, when so made by such sheriff or coroner, shall be taken and held to be notice to all subsequent purchasers, and incumbrancers of the matters stated in such entry.”
It appears frcrai|the record that no entry upon the book so provided to be kept in the sheriff’s office of Cuyahoga county, shows any execution'received by either the sheriff or coroner of that county upon this judgment after the return of the execution of October 28th, 1846, levied upon the land, and previous to the execution of March 12,1855, except the execution against the plaintiff for his costs issued upon a special provision of the statute, and which could not, of course, be regarded as a writ of execution on the judgment against the defendant. If, therefore, the evidence of the issuing of the executions to Cuyahoga county is to be deduced solely from the sheriff’s books of that county, it would follow that more than five years had intervened between the date of the fi. fa. of October 28th, 1846, and the time of issuing the next writ of execution, the vendi. exp. of March 12,1855, which is the next execution upon the judgment against the defendants, noted upon the sheriff’s book. But while the sheriff’s book is to be regarded as correctly showing the fact and date of all executions issued upon the judgment to that county, we do not think its showing should be held conclusive. It does not, like a record, import such absolute verity as to preclude the party from showing, aliunde, the fact of an execution *419 having been issued to a sheriff or coroner of Cuyahoga county. Nor is it necessary that the execution should have been issued to Cuyahoga county. It is sufficient to show that an execution issued upon the judgment to a proper officer of any other county.
But in this case, no other proof was given in relation to the issuing of an execution, except what is afforded by the entries upon the execution docket in the case, at Geauga county. The issuing of the fi. fa. of Oct. 28,1846, to the sheriff of Cuyahoga county, and the return of the same by the sheriff, March 80, 1847, levied upon lands, appears upon that docket. There is only one entry upon the execution docket of a vendi. thereafter having issued, made within the next five years after the fi. fa. so levied, and that is in the words and figures following: “ 1851, Aug. 18, vendi. exp. issued, sent to Bishop & Backus, plaintiff’s attorneys. Returned July 29, 1853. No service made by sheriff by order of plaintiff’s attorneys. No fees charged by sheriff.”
This entry upon the execution docket, although used in evidence by consent of the parties, can hardly be said to prove any fact disproving the correctness of the sheriff’sentries in his execution book in Cuyahoga county. It does not purport to be a return of that sheriff inconsistent with his record kept upon his foreign execution docket. Indeed, it is not pretended that the sheriff’ of Cuyahoga ever received the vendi. exp. of August 18,1851, nor is it proved, as it might have been if it had been the fact, that the sheriff made the memorandum on the execution; and not purporting to be signed by the sheriff, it cannot, contrary to his record in his foreign execution docket, be presumed to have been made by him. The clerk doubtless gave or sent the writ upon their request to the plaintiff’s attorneys; and the same seems to have been by them returned to the clerk without service or even delivery to the sheriff.
The sole question, therefore, presented to us by this *420 record is, whether making out and delivering an execution to the plaintiff or his attorneys, is a “ suing out ” a writ of execution upon the judgment, within the meaning of the statute. If so, the judgment was not dormant at the time of the vendi. exp. of April 24,1855, issuing, and upon which the lands were so sold; but if the making out and delivering to the plaintiff’s attorney the vendi. exp. of Aug. 18, 1851, did not constitute a suing out an execution, without any further evidence of a delivery, or an intention to deliver the same to the sheriff, then more than five years had intervened between the date of the last execution previously issued, to wit, the execution of Oct. 28, 1846, and the time of suing out the next writ of execution upon the judgment.
What, then, is meant by suing out an execution as provided by the statute ? It is contended by the defendant’s counsel, that the provision of the statute, as expressed by the words used, may be complied with by the clerk so writing, sealing and giving to the plaintiff or his agent, a writ of execution upon the judgment in due form. Put this seems to us a more restricted meaning than intended by the legislature, and than the words as used would seem to import. A writ of execution is a written command or precept to the sheriff or ministerial officer, directing him to execute the judgment of the court. It is the command of the court, addressed to the ministerial officer in writing, and under the seal of the court, containing with more certainty the command of the court, and expressed with more solemnity, than if uttered verbally by the court. It is nevertheless the command of the court to the officer to proceed and execute the judgment of the court. When, therefore, we recur to the meaning, nature and office of a writ of execution, and regard it as it really is, simply a precept addressed by the court to the sheriff, it would seem to follow that such a precept could hardly be said to be sued out or issued, without having not only emanated from the court, the party issuing the command, but also emanating to the *421 officer commanded; otherwise the command or precept could not properly he said to have issued. Ve do not suppose that an actual delivery to the officer is necessary to constitute the suing out of a writ of execution. The law authorizing the issuing of an execution to any county within the state, precludes the idea that only an actual delivery of the writ, by the clerk to the sheriff, is contemplated. Nor do we doubt the propriety of the clerk’s giving or intrusting the writ of execution to the plaintiff or his attorney, to be by such party in interest delivered to the sheriff. But we do hold that the plaintiff cannot properly be said to have sued out a writ of execution, a precept to the sheriff, until he has caused the same to be actually or constructively delivered tó the sheriff. A writ of execution, enclosed by letter, properly directed to the sheriff, and sent by mail within the time limited for issuing or suing out the writ, would doubtless be a sufficient delivery to the sheriff; and in such case, even though not actually received by the sheriff until after the expiration of the five years, the suing out of the writ might perhaps be well held to take effect by relation, or the delivery regarded as made by the clerk on mailing the letter. Nor is it necessary that the mail or any other particular mode of transmitting the writ of execution to the sheriff be adopted. It will be sufficient, doubtless, if the plaintiff deliver the writ to a messenger sent with the bona fide intention of a delivery to the sheriff for the purpose of having it served; or, if it be sent by any other reasonable agency, with the intent of having the writ without unnecessary delay, and with reasonable certainty, delivered to the sheriff for service, it would probably be held sufficient.
Having the writ of execution delivered to the officer, attended with the usual effort to make service and the return thereon by him, affords a reasonable public claim, on the part of the plaintiff, that the judgment remains in full force, which would be wanting, by dispensing with the writ being issued to the sheriff.
*422 The reasonableness of this interpretation of the provision of the statute is well illustrated by this case. By reason of the vendi. exp. not having been delivered to the sheriff, no evidence was afforded to those interested in ascertaining the continuance of the judgment lien acquired by the levy of the execution of Oct. 1846, until the vendi. exp. of March 12, 1855, was delivered to the sheriff.
Third persons might, from the long intervening time, have well supposed that the judgment was satisfied, and had ceased to be a lien at any time after the expiration of five years from the date of the fi. fa., as shown upon the foreign execution docket of the sheriff. Indeed, third persons in interest, wishing to purchase or obtain liens upon the land so levied upon, at any time previous to the entry of the last vendi. exp. (of 1855) would, in all probability, have only examined the sheriff’s foreign execution docket of that county to the date of five years anterior to the time of making such examination; and, finding no evidence of a writ of execution within that limit, he might reasonably conclude no foreign judgment was a lien upon the land. So, too, the owner of the land, if a judgment surety, might himself be entirely misled by the same state of facts, and be thereby led to believe the judgment satisfied by his principal, and no longer a lien upon the lands.
"We think, therefore, the judgment was dormant at the time of issuing the vendi. 'exp. upon which the lands were exposed to sale by the sheriff, and that the court of common pleas erred in confirming the sale; and for this cause the order of confirmation must be reversed and set aside.

Judgment accordingly.

Swan, O. J., and Brinkeriioee, Scott and Peck, JJ., concurred.